May it please the Court, my name is Michael Diedrich. I'm attorney for Professor Robin Bhattacharya, an RCC adjunct professor. Your Honors, we'll be hearing an en banc petition this afternoon. I believe that it's very important for little cases such as this case involving a common citizen obtain the Court's attention. So assume you have our complete attention and proceed. My client was RCC professor, an adjunct professor. He was fired after students complained and wanted his examination test. He said he would not do that. Students complained about him and he was fired. He works for a public college, Rockland Community College, and he was exercising his right of speech as a professor in a college to try to teach his students. The District Court thought that supervising an examination or preventing cheating does not relate to the substance of teaching a course. I think that's not at all a fair thing to say. I think that a professor teaching a course teaches it and then evaluates the students through testing. And in this case, when students who apparently did not like the course and didn't want to study for the course then still wanted to pass the course and demanded answers, that series of events resulted in the college saying, we're not going to renew your contract. But how was he not speaking as an employee during this whole thing? Why was he speaking as a... Your Honor, I think the Supreme Court apparent case in the Sixth Circuit is a case in the Supreme Court mentioned it in Garcetti where they specified that they're not going to address in Garcetti the issue of whether an academic is in a different category than an employee such as an ADA in a public setting. And if you look at my appendix, the... So are you saying an academic can never be in the position of an employee from a First Amendment standpoint even though they're employed? They receive compensation that's normally given by an employer to an employee? In many respects, Your Honor, if the college were to direct them to monitor somebody else's What's different about that? For over 100 years with John Dewey and so on, people in education have drawn the distinction saying, and it's in this case in both the collective bargaining agreement with the college and the policy of the college, that professors are not employees. They call them officers and they call them... Doesn't an adjunct sign a contract? Well, they are an employee. But what I'm saying, as the Supreme Court recognized in Garcetti, they're viewed differently because what the professor's doing in the academic setting and for this court to say a professor is an employee for purposes of Garcetti and therefore doesn't have permission for First Amendment, you're also going to have to think just about the other Supreme Court precedent. So Weintraub's wrong then? Pardon me, Your Honor? Weintraub is wrong? Our decision in Weintraub? That was a teacher. Right? The... The Garcetti case. He had been disciplining students. Child aggrievance. And we felt he was an employee in that capacity. As I was trying to respond to Dracoff regarding this, if you're... you can't abuse children as a teacher or as a professor. You have to follow directions. If the school were to say adjuncts have to show up for commencement and you're insubordinate. All those types of things would be in an employee-employer role. A master-servant role. But there's not a master-servant position. And this is the policy of the college and it's what teachers... professors have lobbied for and obtained for a hundred years. We are not in a master-servant role in our role as a professor. As a professor, like the Dubie case, I can profess things that are pretty offensive. But I have First Amendment protection to do so because I'm acting in my capacity as an educator. How many students were we talking about? I think we were talking about a class of 30 or so, Your Honor. Is that a matter of public concern? Certainly, it is because... So every time... how about a class of 10? A seminar of 10? Where a significant number of the students cheat. Is that a matter of public concern? Your Honor, even if it's... Just answer yes or no. Is that a matter of public concern? Even if it's a jury of six people, like the Lane case, where it's somebody testifying and it's wrong, it's not a matter of the size of the... When does it not become a matter of public concern? One student cheating? It's a matter of public concern when the taxpayers fund a college to have professors that can exercise First Amendment rights to teach with academic freedom. As soon as you say... And why does this, by the way, involve scholarship or teaching? Particularly scholarship when we're talking about identifying students who someone, a professor claims, a teacher claims are cheating. Why is that? Because if the teachers are demanding answers to the professors... Ah, that should not happen here. I thought I turned that off, Your Honor. If the students can demand answers from the professor, the professor has lost his ability to teach the class. The students don't have to learn anything that the teacher has taught. Of course, it's vital to the substance of teaching that the professor can relate the course material, whether it's provocative political science material or boring tax or finance material. It's still education. And the teacher has the right, First Amendment right, to teach the class. That's what the college says he has with academic freedom, to teach the class and to evaluate the students. Have we ever said that? Or has the Supreme Court ever provided that sort of an analysis? Well, the Hirad case in the Sixth Circuit said... No, no, no. Have we said that? No, I believe this is an issue of first impression for this Court, Your Honor. And what I'm saying is if a teacher can't evaluate the students, evaluating students is, there's nothing more vital to the substance of teaching than to be able to communicate your course work to the students and then have them explain back whether they've learned the course material. And if they haven't, then it's violating the professor's rights. Also, if an institution, a public institution, is going to allow cheating, it's going to be then allowing people to pass courses, maybe an engineering or a medical class, where they're not qualified. And that's a pernicious effect. That means the public can't rely on the public institution's certificate of graduation that the students pass the courses. So, of course, grading is just as much part of education as teaching. It's like having the give and take we're having here. It's an evaluation. So I think to say that it's not a matter of public concern is too narrowly defining the right. Like I put in my brief, what if somebody were to bring espionage issue to the FBI? The only people that know are the citizen and the FBI. It's not a matter of public concern. The public doesn't know about it, but certainly it's a matter of public concern because important information is being relayed to the FBI as an example. I'm not sure you're right about that, but thank you. You've reserved two minutes of rebuttal. Is your phone turned off, Mr. Dranoff? Yes, it is indeed. Good morning, Your Honors. My name is Eric Dranoff with Soretzky, Katz, and Dranoff, and we represent the RCC appellee in this matter. And I think really what RCC would like to focus on is that this is really a Garcetti analysis type of case. We're talking about really two crimes determining whether the appellant was speaking as a citizen and secondly whether he was speaking on a matter of public concern. We also have the second a First Amendment retaliation claim as well. So starting with whether Professor Barbarilla was speaking as a citizen, the complaint itself sets forth the context of what the professor's obligations were. The professor discusses in the complaint how it was his obligation. Part of his job. Part of his job. Absolutely part of his job. So it's really clearly an official duty scenario, to use a phrase from the Garcetti case, dealing with an issue of academic integrity is part of his job. And there is in fact an academic integrity policy, I believe it's at page 34 of the appendix, that pretty much sets forth, yeah it's 34 and among the options are failing a student, which the complaint sets forth, or the briefs certainly do, that Professor Barbarilla did in fact fail some of the students that he believed tried to engage in the cheating on the final exam. So it is, in RCC's perspective, a classic citizen official duty scenario. As far as public... I have a much more, forgive me, trivial question, but I don't quite understand why the district court, after deciding not to exercise supplemental jurisdiction over the state claims, didn't remand them. You know, Judge Raycroft, the college is fine either way. We've had it, the district court or this court would find whether it would be a remand or whether they have to start a new... I mean, if they had to start again, there might be statute of limitations issues and things like that, and the normal practice would be to remand. Yeah, but it's a discretionary matter. It is a discretionary matter, but you would have no problem if it was a remand. No, we would not have a problem if the Article 78 briefs were remanded to the state court or whatever state court claims. We'll deal with them certainly in the context of the state court proceeding. We haven't had an issue with that. I'm surprised. I just thought about Judge Raycroft. I don't know how we got there with the dismissal of the supplemental claims, because in the decision, in the opinion that the district court said supplemental jurisdiction over the state law claim. So why weren't they remanded anyway? That's what the district court said. Do you know what happened? I can't answer that. There was no oral argument in the court below, so I... And they weren't mentioned... I looked at the judgment, too. They weren't specifically mentioned in the judgment, so why do we believe that they were dismissed, because that's what the judgment said for the whole case? Is that fair to say? Well, the clerk's office, as a factual matter, did not send them back to the state court, correct? That's correct. Yeah. That's correct. So, any other questions on the remand grounds? So proceeding on the Garcetti analysis, the second issue we deal with is whether this was from the public interest. And Garcetti and all the tribes have made clear that it's a practical inquiry. You will have to look at the content, the form, and the context of what is being said. And the classic scenario where there is not a public purpose, public interest matter, is where someone is dealing with personal grievance. When you look at the initial complaint, the amended complaint, the proposed second amended complaint, what we're dealing with is a situation where there was a complaint about a professor by certain students, and that complaint was brought to the professor's attention by his superior, in this case the department chair. So strictly dealing with the exchange of one student complaint, and Professor Bhattacharyya's response to that complaint, essentially saying, well, these are students who are trying to get over on me in the classroom and cheat on a file. This is not a public interest scenario. It's strictly his personal grievance. So that's the two-step Garcetti analysis. Then when we deal with the issue of causation, the complaint and the briefs say, and I think it's page three of the appellant's brief. No, it's actually page five. No, page three is correct. The student complaint. That's what the brief says. The complaint also at the appendix, page 17, refers to how the college gave more credence to the complaint of the students than the response given by Professor Bhattacharyya to the student complaint. Again, saying that he was not renewed because of the student complaint. So that's the causation issue. Now, the issue... Your time has elapsed, Mr. Jones. I'm getting there. Oh, is there anything else you want me to discuss? The academic freedom issue? Thank you. Okay, thank you. Ms. Mercy. Thank you. Good morning. My name is Megan Mercy. I'm a professor at the New York State United Teachers. I'm only making a very brief point here in my papers. The dismissal of the state law claims is discretionary by the Southern District Court judge. But he didn't do it. He decided not to. He dismissed the case and he decided not to remand. Why do you say he decided not to remand? You heard me read that portion of his opinion, right? Yes, where he dismissed... The very end of his opinion. It's at the appendix, page 93. The court declines to exercise supplemental jurisdiction over the remaining state law claims here. Why do you say that means dismissing them? It wasn't ordered that as remanded. So if it's not a question of abuse of discretion, it's a question of ambiguity. Where the clerk treated that as a dismissal, but the judge may not have intended that, you wouldn't have any objection, would you, to our suggesting that it be remanded instead of dismissed? Would you? Well, my only pause would be that at this point there is an application for a second amended pre-point. I think a dismissal would give me a point of challenge of the opportunity to file these papers back in the Supreme Court as to his liking, which the court didn't rule on whether or not the First Amendment complaint by dismissing it gives him the opportunity to file it as he would like. Was any of this brought to the attention of the district court, this issue of remanding as opposed to simply dismissing without remanding? Not that I'm aware of, no. What is your problem? So it goes back to state court and the judge either says, yes, you can file an amended complaint or you can't. What's your problem with that? Why are you hurt in any real way by the possibility that the state judge might say there's some state law issue here that warrants an amended complaint? You don't think the state judge should have that opportunity? I do think a state judge can have that opportunity. So you don't have any real problem with remand, do you? I don't. We wouldn't. My clients certainly wouldn't. If they wanted to refile, that's okay, and if the court remanded it, that would have been okay, too, but there was no actual remand in the decision, which is why we all believed it was dismissed. Do you have any further questions about this minor point? No, thank you for your time. Mr. Dietrich. Your Honor, if a public professor is assigned to teach a course that can be provocative, evolution, whatever, it should not make a difference whether he goes beyond the classroom and brings like— What about fundamentals of finance? Exactly, Your Honor. Extremely boring— Is that provocative? Extremely boring class. But this is my point in the beginning. If you start diminishing First Amendment rights incrementally, if you deny it to the finance professor, you're also denying it to the political science or the science professor. If you say that the professor like Doobie, who had provocative race relations class, where he had all sorts of criticism, in this case you had students that were criticizing. They didn't want to learn finance. There's no difference principally between the boring finance class and the political science or the evolutionary science or any kind of other class. A professor doesn't need to go out into the streets and start bringing up posters and getting people rallying behind him because that's not the job of a professor. A job of a professor is not to be the servant of the institution in his job as professor. Yes, he's the employee for everything else. He can't violate the parking regimen and whatnot. But as to his teaching role, all these Supreme Court and circuit court cases and also all these cases indicate it's different, that he is entitled then not to a Big Bar Steady analysis. And I'm not sure how to proceed with this issue, Your Honor, but last evening I found a Ninth Circuit case saying Big Bar Steady does not apply, and I can either send that as a letter or I can tell you— Well, that should have been sent before, maybe last night, but feel free to send it by the end of today. I don't understand why you keep saying that finance is boring. Now, civil procedure I could understand, but— Your Honor, I put in my brief that finance— I agree with Judge Rakoff, by the way. I put in my brief that finance makes— Sure, I agree. I didn't like tax at law school, Your Honor. I put in my brief, yes, it looks foreign, but you know what? If you're talking about governance, and this is what Thomas Jefferson said, you'd rather have the whole citizenry enlightened than just a few very enlightened and paraphrased. Mr. Dietrich, on the slightly ministerial issue of remand, you did not raise this with the district court. Is that correct? It wasn't an issue. I was not—it wasn't brought up because I was asking the court not to throw out the case. It didn't come out. I do think, even if, Your Honors, I mean, I hope you accept my argument, as also in my circuits pointing out that Garcetti does not apply here and that you will reverse the lower court. If that's the case, I will observe that the lower court, as the Article 78 claim said, that it does not want to deal with a state law Article 78 proceeding. So I believe just even if this court, as I hope you will, reverses, the district court likely will not want to deal with the Article 78 proceeding. And as to that, because it was a removed case here in the federal courts, I would request that the Article 78 aspect be remanded back to the state courts because it makes sense. Removal, remand. All right. But you didn't raise it with the district court judge. And are there any other reasons besides you'd like to have it remanded as opposed to dismissing? Well, there's always the potential of section limitations. Perhaps there's also the filing, additional filing fee. And also, it would keep the same index number. The court below will realize it's the same case coming back to it as opposed to believing it's an entirely new case. And it just makes more sense to simply be remanded to the state court with the same state court index number. And your client would proceed with that? The Article 78? Yes, Your Honor. I mean, yes. I mean, obviously, I prefer. I think as to the non-Article 78 aspects of the case, in other words, my client's indianly alleged state law discrimination claims, I think if this court were to reverse, then the district court, as a matter of fact, could allow a jury to decide, was the retaliation regarding the First Amendment academic freedom issue, or was there a motivating factor by the district court? I mean, I didn't hear from the other side, frankly, a lot of resistance to the idea of remanding. But, okay. Thank you very much. We'll reserve decision. Thank you, Your Honor. Thank you very much. And have a pleasant bonfire this afternoon.